[Cite as *M.A.B. v. B.R.L.*, 2024-Ohio-573.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| M.A.B., | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | | No. 112600 |
| v. | : | |
| B.R.L., | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED
**RELEASED AND JOURNALIZED:** February 15, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-18-371169

*Appearances:*

Law Offices of Cara L. Santosuosso, LLC, and Cara L.
Santosuosso; Bennett Legal, LLC, and Mark S. Bennett,
*for appellee/cross-appellant.*

Cavitch, Familo & Durkin Co., LPA, and Mary C. Sotera,
*for appellant/cross-appellee.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, B.R.L. ("Mother"), appeals the April 4, 2023 judgment of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, holding her in contempt of court. She claims the following two errors:

> 1. The trial court erred as a matter of law when it held that appellant violated a court order dated 6/21/2021, when appellant insisted that appellee comply with the specific terms of the 6/21/21 court order prior to exercising unsupervised visitation with the parties' then six-year old son.
>
> 2. The trial court erred when it ordered appellant to provide make-up parenting time and pay appellee $400 for drug testing.

{¶ 2} Plaintiff-appellee, M.A.B. ("Father"), cross-appeals the April 4, 2023 judgment and claims the following single error:

> The trial court committed an abuse of discretion by failing to award reasonable attorney's fees to the appellee/cross-appellant upon a finding of contempt.

{¶ 3} We affirm the trial court's judgment in part, reverse in part, and remand the case to the trial court to require Mother to provide Father with five days of make-up parenting time.

## I. Facts and Procedural History

{¶ 4} Mother and Father were married in June 2015, and they had one child born as issue of the marriage. The parties divorced in June 2019, and the parties agreed to a shared parenting plan for their minor child. Mother subsequently filed a motion to terminate shared parenting and asked that she be named the sole residential and legal custodian of the child due to Father's alleged substance abuse. The parties reached an agreement modifying the shared parenting plan, and the

domestic relations court journalized it in an agreed judgment entry dated June 21, 2021 (the "agreed judgment entry").

{¶ 5} The agreed judgment entry addressed Mother's concerns regarding Father's alleged substance abuse and provided a drug testing protocol that states, in relevant part:

> Father's unsupervised parenting time set forth herein is contingent upon Father passing the drug tests set forth below. On or before June 16, 2021[,] Father shall submit to a supervised 10 panel toenail drug test administered by Advanced Medical Services, at Father's costs. The test must be negative for Father to commence his parenting time. For purposes of clarity, if the initial 10 panel toenail test is positive, prior to commencing his parenting time, Father must successfully pass a subsequent 10 panel toenail test; thereafter, the testing protocol described below shall be followed. Should Father submit to a second 10 panel toenail retest, he shall not have unsupervised parenting time while the results of his retest are pending.

> Thereafter, Father shall submit to [a] 10 panel fingernail drug test[] at Advanced Medical Services every 90 days with a 2 (business day) grace period. The within testing protocol shall terminate within one (1) year from the date of Father's first 10 panel toenail drug test if all tests are negative. Father shall present at least 4 negative 10 panel nail tests within 1 year prior to the termination of testing.

> * * *

> Should any such fingernail test be positive within the one (1) year time frame set forth above, then Father's parenting time shall revert to supervised parenting time for two (2) hours per week at the Oaks Family Care Center. If there is a positive 10 panel fingernail test, or if the results are inconclusive, Father shall have the option of immediately submitting to a 10 panel toenail drug test at Advanced Medical Services for confirmation. Father shall not have unsupervised parenting time while the results of his retest via toenail are pending and shall immediately return the child to Mother if the positive fingernail test is learned of while the child is in the Father's care or the care of his family. Father will immediately resume unsupervised parenting time after Father presents a negative 10 panel toenail drug test administered by Advanced Medical Services.

{¶ 6} Father began drug testing according to the schedule outlined in the agreed judgment entry in June 2021. All the tests results were negative for panels conducted in June, September, and December 2021, and March 2022. (Tr. 14-17.) Father again submitted himself to a ten-panel fingernail drug test on June 13, 2022. On June 16, 2022, Advanced Medical Services reported that nine of the ten tests in the panel were negative but that the tenth test, a test for cannabinoids, Carboxy-THC (the "THC test"), was canceled because the sample taken was not sufficient to perform a confirmatory test. (Tr. 50 and 95, joint exhibit No. 1.) In other words, the THC test was not conducted because the laboratory did not have a large enough sample to complete it. (Tr. 19, 22, and 26-27.) The test results, including the cancelation of the THC test, were reported to Mother's attorneys, who reported the results to Mother, in accordance with the agreed judgment entry,

{¶ 7} On June 17, 2022, the day after Father received the test results, Father drove from his job site in Toledo, Ohio to Advanced Medical Services in Parma, Ohio to provide an additional sample to complete the THC test. (Tr. 27.) In the meantime, Mother refused to allow Father to have unsupervised visitation with the parties' minor child.

{¶ 8} On June 24, 2022, Advanced Medical Services reported to Father and to Mother's attorneys that the remaining THC test was negative. (Tr. 27, 96, 111, and 120.) Father immediately contacted Mother to resume his parenting time. However, on advice of counsel, Mother refused to deliver the child for unsupervised visitation until after Father completed a ten-panel toenail drug test. (Tr. 54 and 96.)

Mother maintained that the "canceled" test was synonymous with an "inconclusive" result and that, therefore, Father was required by the agreed judgment entry to submit to a ten-panel toenail drug test. (Tr. 31 and 100.) Desiring parenting time with his child, Father acquiesced to Mother's demand and promptly submitted to a ten-panel toenail test. (Tr. 29, joint exhibit No. 3.) The ten-panel toenail test cost $400. (Tr. 27-28.)

{¶ 9} On June 27, 2022, Advanced Medical Services reported that Father's ten-panel toenail test was negative, but Mother did not drop the child off with Father until June 29, 2022. (Tr. 31.) Father was supposed to have vacation time with the child from June 25, 2022, until July 1, 2022, but he did not receive the child until 8:00 p.m. on June 29, 2022. (Tr. 32 and 34.)

{¶ 10} On July 12, 2022, Father filed a motion to show cause, arguing that although he fully complied with the drug-testing protocol, Mother violated the agreed judgment entry by withholding parenting time from him. In his prayer for relief, Father asked the domestic relations court to hold Mother in contempt, require Mother to bear all costs of the show-cause proceedings, require Mother to pay Father's attorney fees, and for all relief that is appropriate, just, and equitable. A magistrate held a hearing on the motion in October 2022.

{¶ 11} Following the hearing, the magistrate issued a decision finding Mother in contempt of court for improperly withholding visitation from Father from June 24, 2022, through June 29, 2022. The magistrate recommended a 30-day suspended jail sentence that could be purged if Mother complied with two

conditions: (1) pay Father $400 within 14 days of the adoption of the magistrate's decision, and (2) provide Father with six days of make-up parenting time during Mother's alternating weekend parenting time within 90 days of the adoption of the magistrate's decision. The magistrate's decision denied Father's request for attorney fees. Mother filed timely objections and supplemental objections to the magistrate's decision. Father filed a brief in opposition to Mother's objections but did not file his own objections to the magistrate's decision. The trial court adopted the magistrate's decision without modification. Mother, having obtained a stay of the trial court's judgment, now appeals the trial court's judgment.

## II. Law and Analysis

### A. Contempt of Court

{¶ 12} In the first assignment of error, Mother argues the trial court erred in finding that she violated the June 21, 2021 agreed judgment entry when she insisted that Father submit to a ten-panel toenail test prior to exercising unsupervised visitation with the parties' minor child.

{¶ 13} "Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority." *Palnik v. Crane*, 8th Dist. Cuyahoga No. 107400, 2019-Ohio-3364, ¶ 54. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph two of the syllabus.

{¶ 14} Contempt can be either direct or indirect. *In re J.M.*, 12th Dist. Warren No. CA2008-01-004, 2008-Ohio-6763, ¶ 46. Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. Indirect contempt involves acts occurring outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders. R.C. 2705.02; *In re Lance*, 2016-Ohio-2717, 55 N.E.3d 1129, ¶ 12 (8th Dist.).

{¶ 15} Contempt is further classified as either civil or criminal. *Oak Hill Banks v. Ison*, 4th Dist. Jackson No. 03CA5, 2003-Ohio-5547, ¶ 14. "This distinction depends largely upon the character and purpose of the punishment imposed." *Id.* Whereas criminal contempt is solely punitive, civil contempt contemplates punishment that is remedial or coercive and for the benefit of the complainant. *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Although a prison sentence may be imposed in cases of civil contempt, the contemnor must be afforded the opportunity to purge the contempt. *Id.* "'Once the contemnor purges his contempt, any sanctions will be discontinued because compliance has been achieved.'" *In re Lance* at ¶ 13, quoting *U.S. Bank Natl. Assn. v. Golf Course Mgt., Inc.*, 12th Dist. Clermont No. CA2008-08-078, 2009-Ohio-2807, ¶ 16. Thus, the contemnor is said to "carry the keys to his prison in his own pocket." *Brown* at 253.

{¶ 16} This case involves civil contempt because the court suspended the jail sentence and afforded Mother an opportunity to purge the contempt. To establish

civil contempt, the complainant must establish by clear and convincing evidence the existence of a valid court order, that the respondent had knowledge of the order, and a violation of the order. *In re K.B.*, 8th Dist. Cuyahoga No. 97991, 2012-Ohio-5507, ¶ 77. Once the prima facie case of contempt has been established by clear and convincing evidence, the burden shifts to the nonmoving party to either rebut the initial showing of contempt or establish an affirmative defense by a preponderance of the evidence. *K.M.M. v. A.J.T.*, 8th Dist. Cuyahoga No. 109815, 2021-Ohio-2452, ¶ 24, citing *Allen v. Allen*, 10th Dist. Franklin No. 02AP-768, 2003-Ohio-954, ¶ 16.

{¶ 17} "Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. However, the determination of contempt is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Cleveland v. Heben*, 74 Ohio App.3d 568, 573, 599 N.E.2d 766 (8th Dist.1991). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 18} The agreed judgment entry outlines the drug-testing protocol Father was required to follow and provides, among other things:

> If there is a positive 10 panel fingernail test, or if the results are inconclusive, Father shall have the option of immediately submitting to a 10 panel toenail drug test at Advanced Medical Services for

confirmation. Father shall not have unsupervised parenting time while the results of his retest via toenail are pending[.]

{¶ 19} "An agreed judgment entry is a contract that is reduced to judgment by a court." *Sovak v. Spivey*, 155 Ohio App.3d 479, 2003-Ohio-6717, 801 N.E.2d 896, ¶ 25 (8th Dist.), citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39, 285 N.E.2d 324 (1972). We, therefore, apply the same rules of construction to an agreed judgment entry as we apply to contracts. *Dvorak v. Petronzio*, 11th Dist. Geauga No. 2007-G-2752, 2007-Ohio-4957, ¶ 18, quoting *Phillips v. Phillips*, 11th Dist. Ashtabula No. 2006-A-0037, 2007-Ohio-3368, ¶ 34. ("'[A]n agreed judgment entry is subject to the same rules of construction as a contract.'")

{¶ 20} In interpreting contracts, the court's role is "to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11, citing *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). Where the contract terms are clear and unambiguous, we may determine the parties' rights and obligations from the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). The interpretation of a written contract is a matter of law. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9.

{¶ 21} It is undisputed that none of Father's test results were positive for any drug. Mother argues the term "inconclusive" refers to "any result that does not fit

within the purview of positive or negative" and, therefore, includes a panel marked "canceled." (Appellant's brief at p. 9.)

{¶ 22} The agreed judgment entry does not reference a situation where a test is "canceled." However, the plain meaning of the word "canceled" means "to decide not to conduct or perform (something planned or expected)[.]" Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/similar (accessed Dec. 7, 2023). Thus, despite Mother's argument to the contrary, a "canceled" test does not refer to a test result; it refers to the fact that the test was not yet performed. Indeed, the THC test was not performed because it did not have a sufficient sample to complete that test. (Tr. 50, 95.)

{¶ 23} The THC test was subsequently completed after Father returned to the lab, provided an additional fingernail sample, and the result of the result came back negative on June 24, 2022. (Tr. 21-22, 95-97, 101-102, 111, and 120.) Therefore, all the tests in the ten-panel fingernail test were negative as of June 24, 2022, and Father was entitled to unsupervised visitation with the child under the plain terms of the agreed judgment entry. And, Father had one week of vacation scheduled to begin with the child on June 25, 2022. Yet, Mother insisted that Father submit to a ten-panel toenail test before he could have visitation with the parties' child.

{¶ 24} The evidence from the hearing clearly and convincing shows that Mother knew that the agreed judgment entry was a valid court order. She nevertheless claimed the canceled THC test was synonymous with an "inconclusive" result and that she was therefore justified in requiring Father to submit to a ten-

panel toenail test. But the canceled THC test had no result positive, negative, or inconclusive because it had not yet been performed. The cancelation of the THC test merely delayed the results of the ten-panel test and allowing the result of the THC test to complete the ten-panel fingernail test did not change the terms of the agreed judgment entry. Mother's explanation for withholding the child and requiring Father to submit to an unnecessary ten-panel toenail test after the THC test returned a negative result was unreasonable. We, therefore, agree with the trial court's finding that Mother violated the agreed judgment entry by unreasonably withholding the child and interfering with Father's visitation.

{¶ 25} Accordingly, the first assignment of error is overruled.

## B. Purge Conditions

{¶ 26} In the second assignment of error, Mother argues the trial court erred in ordering her to provide Father with six days make-up parenting time and to pay Father $400 for the ten-panel toenail drug test.

{¶ 27} As previously stated, any sanction imposed for civil contempt must afford the contemnor the right to purge him or herself of the contempt. *In re Lance*, 2016-Ohio-2717, 55 N.E.3d 1129, at ¶ 13. And the purpose of civil contempt is to compensate for losses or damages sustained by reason of noncompliance with the court's order. *Pugh v. Pugh*, 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984). Sanctions may include, among other things, "fines designed to compensate the other party for the losses incurred as a result of the contemnor's refusal to comply." *Williams v. Cordle*, 10th Dist. Franklin No. 95APF08-978, 1996 Ohio App. LEXIS

388 (Feb. 8, 1996). However, "[a] trial court abuses its discretion when it orders conditions for purging that are unreasonable or impossible for the contemnor to meet." *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 51.

{¶ 28} Mother contends the trial court erred in ordering her to reimburse Father the $400 cost of the ten-panel toenail test. She argues that under the terms of the agreed judgment entry, Father alone bears the cost of the drug testing protocol. However, Mother unreasonably refused to allow Father to visit with the child unless or until he submitted himself to the ten-panel toenail test. This test was unnecessary because once the result of the THC test came back negative, all the results of the ten-panel fingernail test were negative, and Father was entitled to visitation. Father only acquiesced to Mother's demand that he submit to the toenail test because it was the only way he could visit with his child without waiting for a court ruling. The unnecessary test cost $400. Therefore, the trial court's order requiring Mother to reimburse Father for the cost of the test was reasonable.

{¶ 29} The trial court's order also required that Mother provide six days of make-up time during her alternating weekend parenting time. The trial court's determination that Father was entitled to six days of make-up time was based on the fact that Father obtained a negative result on the THC test on June 24, 2022, but he did not receive the child until June 29, 2022 at 8:00 p.m., which amounts to a total of six days. However, according to Father's own testimony, his scheduled vacation time was scheduled to begin on June 25, 2022. (Tr. 32-33.) And, Father was not

entitled to visitation prior to obtaining the result of the THC test, which he received on June 24, 2022. Therefore, he lost five days of visitation rather than six, and the trial court erred in requiring Mother to provide six days of make-up parenting time.

{¶ 30} The second assignment of error is sustained in part and overruled in part.

## C. Attorney Fees

{¶ 31} In the sole cross-assignment of error, Father argues the trial court abused its discretion in failing to award reasonable attorney fees to Father upon finding Mother in contempt. He contends the award of attorney fees is mandatory under R.C. 3109.051(K).

{¶ 32} However, Father did not raise this issue as an objection to the magistrate's decision denying his request for attorney fees. "Pursuant to Civ.R. 53(D)(3)(b)(iv), except for a claim of plain error, a party that fails to object to the magistrate's decision may not assign as error on appeal the trial court's adoption of any of the magistrate's factual findings or legal conclusions." *Petrovich v. Auto Repair, Inc.*, 8th Dist. Cuyahoga No. 105216, 2017-Ohio-8731, ¶ 8; *State ex rel. Booher v. Honda of Am. Mfg., Inc.*, 88 Ohio St.3d 52, 53-54, 723 N.E.2d 571 (2000).

{¶ 33} The doctrine of plain error is not favored in civil cases and must be applied with the utmost caution. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Therefore, we only find plain error "in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation

of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* at syllabus.

{¶ 34} R.C. 3109.051(K), provides, in relevant part:

If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting parenting time rights issued pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights issued pursuant to this section, section 3109.11 or 3109.12 of the Revised Code, or any other provision of the Revised Code, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt * * *.

{¶ 35} R.C. 3109.051(K) provides that the trial court shall award "reasonable" attorney fees upon a finding of contempt. *Robinson v. Robinson*, 8th Dist. Cuyahoga No. 85980, 2005-Ohio-6240, ¶ 14. The mandate is two-fold: (1) the court must award attorney fees upon a finding of contempt, and (2) the attorney-fee award must be reasonable. The trial court must, therefore, determine the reasonableness of any attorney-fee claim before awarding attorney fees. "Reasonableness for purposes of calculating attorney fees is a question of fact and the trial court must have evidence before it probative of that issue in order to make the finding." *Hart v. Spenceley*, 12th Dist. Butler No. CA2011-08-165, 2013-Ohio-653, ¶ 22, citing *Rapp v. Pride*, 12th Dist. Butler No. CA2009-12-311, 2010-Ohio-3138, ¶ 32; *see also Hall v. Nazario*, 9th Dist. Lorain No. 07CA009131, 2007-Ohio-6401, ¶ 17.

{¶ 36} "Reasonable attorney fees must be based upon actual services performed by the attorney and upon the value of those services." *Hart* at ¶ 22, citing *Vandeventer v. Vandeventer*, 132 Ohio App.3d 762, 726 N.E.2d 534 (12th Dist.1999). A raw calculation of hours spent multiplied by the attorney's hourly rate is not sufficient to determine the reasonableness of the fees. *Farley v. Farley*, 97 Ohio App.3d 351, 356, 646 N.E.2d 875 (8th Dist.1994); *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), syllabus (When awarding reasonable attorney fees, the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation based on the time and labor required to perform the legal services, the novelty and difficulty of the questions involved, the amount involved and the results obtained, the time limitations imposed by the client or the circumstances, and the fees customarily charged in the locality for similar legal services.).

{¶ 37} Loc.R. 21 of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, governs attorney fees and provides in relevant part:

> At the time of the final hearing on the motion or pleading that gives rise to the request for attorney fees, the attorney seeking such fees *shall* present:
>
> (1) An itemized statement describing the services rendered, the time for such services, and the requested hourly rate for in-court time and out-of-court time;
>
> (2) Testimony as to whether the case was complicated by any or all of the following:
>
> (a) a new or unique issue of law;
>
> (b) difficulty in ascertaining or valuing the parties' assets;

(c) problems with completing discovery;

(d) any other factor necessitating extra time being spent on the case[.];

(3) Testimony regarding the attorney's years in practice and experience in domestic relations cases; and

(4) Evidence of the parties' respective income and expenses, if not otherwise disclosed during the hearing.

Loc.R. 21(D) further warns that "[f]ailure to comply with the provisions of this rule shall result in the denial of a request for attorney fees[.]"

{¶ 38} "An award of attorney's fees in a domestic relations action is committed to the sound discretion of the trial court." *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972, ¶ 21, citing *Stuart v. Stuart*, 144 Ohio St. 289, 58 N.E.2d 656 (1944).

{¶ 39} Father's attorney testified at the hearing regarding the number of hours she expended to prepare for the show-cause hearing and provided a general explanation of the work performed. However, Father's attorney did not present an itemized statement of her fees nor was there any evidence presented regarding the parties' respective income and expenses. Therefore, the trial court acted within its discretion to deny the request for attorney fees and no plain error occurred.

{¶ 40} The sole cross-assignment of error is overruled.

{¶ 41} The trial court's judgment is affirmed in part and reversed in part. The case is remanded to the trial court to modify its judgment to require Mother to provide Father with five days of make-up parenting time. However, to be clear,

Mother is also required to reimburse Father the $400 cost of the ten-panel toenail test as originally ordered by the trial court.

It is ordered that appellee and appellant share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
MICHELLE J. SHEEHAN, P.J., CONCURS IN PART AND DISSENTS IN PART
(WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 42} I respectfully concur in part and dissent in part. Based on App.R. 12(A)(2) and 16(A)(7), I would not address the issue of parenting time in Mother's second assignment of error or reverse the trial court's judgment with respect to this issue. Mother did not separately argue — or even mention — parenting time within her second assignment of error, and therefore, I would disregard it. I otherwise agree with the majority's opinion.